THE WASP.

DONOGHUE–KELLOGG MILL CO. v. THE WASP.

(District Court, D. Washington, N. D. April 4, 1898.)

1. Towing Raft—Guaranty of Safe Delivery—Breach.
Where the lessees of a steam tug entered into a contract to tow a raft of cedar logs, and guarantied their safe delivery, they are liable under the guaranty for logs lost by them, and, under the statute of the state of Washington (2 Ballinger's Codes & St. Wash. § 5953), the libelants have a lien on the tug for the amount of damages.

2. Same—Negligence.
Where the master and lessees of a tug, towing a raft, finding that they cannot enter a bay until the next flood tide, leave the raft unsecured except by a single line tied to an insecure stake in the beach, and remain absent until the next flood tide, they are guilty of gross negligence and liable for the value of the logs lost.

T. B. Hardin, for libelants.
Allen & Powell, for claimant.

HANFORD, District Judge. The lessees of the steam tug Wasp entered into a contract with the libelants to tow a raft of cedar logs from Utsalady to the libelants' shingle mill at Ballard, and, in consideration of the price for towing, agreed to be paid, guarantied the safe delivery of the logs. At the entrance to Salmon Bay, the tug, with her tow, encountered difficulties, and was delayed, and, when the raft was delivered at the mill a large number of the logs had been lost, for which loss the libelants have sued to recover damages. The contract by which the lessees guarantied the safe delivery of the logs has been broken, and, without proof of additional facts, the libelants are entitled to recover damages, and, by force of a statute of this state, the libelants have a lien upon the steam tug for the amount of damages. 2 Ballinger's Codes & St. Wash. § 5953. Without the guaranty, the tug would not be liable, unless there was negligence in handling the raft, amounting to a failure to exercise ordinary care and skill, and the libelants would have the burden of proof to show a breach of the contract by failure on the part of the tug's captain to exercise ordinary care and skill. The A. R. Robinson, 57 Fed. 667. But, even under this rule, the libelants have made a good case. It is clearly established by the evidence that there was gross negligence on the part of the master and the lessees of the tug in handling this raft. I

will not criticise their conduct previous to the grounding of the raft on the sand spit at the entrance to Salmon Bay. It is sufficient to say that, when they found that they would be unable to enter until the next flood tide, they were negligent and foolish in leaving the raft unsecured except by a single line tied to an insecure and weak stake or post in the beach, and remaining absent until the next tide had come in sufficiently to float the raft. No person could doubt that it would be negligence for the tug to have left her tow for 10 or 12 hours, afloat in mid channel, and yet it would have been less liable to have been lost or damaged than in the position in which the tug did leave this raft. I find the value of the logs which were lost to be $814.80, and this amount, with interest at the rate of 7 per cent. per annum from January 1, 1897, is the amount which, with costs, will be decreed to the libelants as their damages. The evidence fails to show that the libelants were damaged by loss of profits. They did lose $7 per day for a period of 10 days, during which the mill was shut down, which they would be entitled to recover in addition to the value of the logs, but this damage only equals the amount of the towage bill, which should be deducted.